**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Pedro Daniel To Ajsoc and Miguel Eduardo Ixmata Tzic, individually and on behalf all other employees similarly situated,

Plaintiffs,

- against –

Elite Renovators Inc, Elite Contractors Inc., Hassan Jhangir, and Waqas Ahmed,

Defendants.

Case No.

**FLSA COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Pedro Daniel To Ajsoc and Miguel Eduardo Ixmata Tzic (“Plaintiffs”), individually and on behalf of others similarly situated, by and through their attorneys, Seo Law Group, PLLC, upon their knowledge and belief, and as against Elite Renovators Inc and Elite Contractors Inc., (collectively, “the Corporate Defendants”), Hassan Jhangir, and Waqas Ahmed (the “Individual Defendants,” and collectively with the Corporate Defendants, the “Defendants”) and state as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees by Defendants who worked as non-exempt bricklaying construction workers at Elite Renovators Inc and Elite Contractors Inc. (hereafter, also collectively referred to as “Elite” or the “Construction Company”), with principal places of business located at 845 Bay Ridge Ave., Brooklyn, NY 11220 and 2041 79th St., Brooklyn, NY 11214, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (“FLSA”), the New York Labor Law (“NYLL”) for various willful and unlawful employment policies, patterns, and/or practices.

2. Elite operate and/or operated as a construction company and the bricklayers of the Construction Company performed bricklaying work, including but not limited to the installation of bricks and blocks for walls and structures, while employed by Defendants at various job sites.

3. Elite paid Plaintiffs and other similarly situated current and former bricklayers pursuant to a similar, if not the same, compensation structure.

4. Defendants classified Plaintiffs, and other similarly situated current and former bricklayer employees, as non-exempt from overtime.

5. Plaintiffs bring this lawsuit against the Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA. Plaintiffs bring their claims under the NYLL on behalf of themselves, individually, and on behalf of any FLSA Collective Action Member(s), as that term is defined below, who opts-in to this action.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8. Venue is proper in this United States District Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of New York.

**THE PARTIES**

**PLAINTIFF PEDRO DANIEL TO AJSOC**

9. Plaintiff Pedro Daniel To Ajsoc ("Plaintiff Ajsoc") is an adult individual residing in Kings County, New York.

10. Plaintiff Ajsoc was employed by Defendants at their construction company(ies), Elite, as a bricklayer from in or around March 2016 until on or about July 5, 2025.

11. Plaintiff Ajsoc consents to being a party Plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

12. The consent to sue form for the Plaintiff Ajsoc is attached hereto as **Exhibit 1**.

**PLAINTIFF MIGUEL EDUARDO IXMATA TZIC**

13. Plaintiff Miguel Eduardo Ixmata Tzic ("Plaintiff Tzic") is an adult individual residing in Kings County, New York.

14. Plaintiff Tzic was employed by Defendants at their construction company(ies), Elite, as a bricklayer from on or around May 5, 2023 until in or about the end of January 2026.

15. Plaintiff Tzic consents to being a party Plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

16. The consent to sue form for the Plaintiff Tzic is attached hereto as **Exhibit 2**.

## CORPORATE DEFENDANTS

**ELITE RENOVATORS INC** *(is believed to be a parent/successor corporation of Elite Contractors Inc. or a joint employer with Elite Contractors Inc., or both)*

17. The Corporate Defendant, Elite Renovators Inc (hereafter, "Elite Renovators") is a domestic business corporation and existing under the laws of the State of New York with a Service

of Process address at 845 Bay Ridge Ave., Brooklyn, NY 11220 in the New York Department of State record.

18. Upon information and belief, Defendant Elite Renovators Inc maintains a principal executive office located at 845 Bay Ridge Ave., Brooklyn, NY 11220.

19. Defendant Elite Renovators was incorporated on October 17, 2019, according to the New York Department of State record.

20. Upon information and belief, Defendant Elite Renovators, is either the successor corporation to Elite Contractors Inc. or is/was a co-operator of Elite Contractors Inc., with a principal executive office located at 845 Bay Ridge Ave., Brooklyn, NY 11220.

21. Upon information and belief, Defendant Elite Renovators began utilizing another principal executive office located at 2041 79th St., Brooklyn, NY 11214, at some time during Plaintiffs' employment with Defendants.

22. Upon information and belief, Defendant Elite Renovators is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

23. Defendant Elite Renovators is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from its construction business operation(s) based at 845 Bay Ridge Ave., Brooklyn, NY 11220 and/or 2041 79th St., Brooklyn, NY 11214.

**ELITE CONTRACTORS INC.**

24. Upon information and belief, Defendant Elite Contractors Inc. (hereafter, "Elite Contractors") is a domestic "inactive" business corporation as of January 3, 2022, that was previously existing under the laws of the State of New York with Service of Process address at 845 Bay Ridge Ave., Brooklyn, NY 11220.

25. Upon information and belief, Defendant Elite Contractors, is and/or was either the predecessor corporation to Elite Renovators or is/was a co-operator of Elite Renovators, with a principal executive office located at 845 Bay Ridge Ave., Brooklyn, NY 11220.

26. Upon information and belief, Defendant Elite Contractors maintained and/or maintains another principal executive office located at 2041 79th St., Brooklyn, NY 11214, together with Defendant Elite Renovators.

27. Upon information and belief, Defendant Elite Contractors is presently "inactive" but was, at times relevant to the allegations in this Complaint, an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

28. Defendant Elite Contractors is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from its construction business operation(s) based at 845 Bay Ridge Ave., Brooklyn, NY 11220 and/or 2041 79th St., Brooklyn, NY 11214.

**INDIVIDUAL DEFENDANTS**

**DEFENDANT HASSAN JHANGIR**

29. Upon information and belief, Defendant Hassan Jhangir (hereafter, "Defendant Jhangir)" is an individual who has been the de facto and de jure owner, officer and/or agent of Defendant Corporations during the relevant time period, and he is sued individually. Defendant Jhangir has possessed and exercised operational control over Defendant Corporations, for example, he has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In particular, Defendant Jhangir has a prominent role in the setting of salaries for Corporate Defendants' employees and hires and fires Corporate Defendants' employees.

30. Upon information and belief, Defendant Jhangir has ownership interest in the Corporate Defendants, and he is an owner, manager, and supervisor of all his employees and the employees of the Corporate Defendants, together with Defendant Waqas Ahmed.

31. Upon information and belief, Defendant Jhangir took over the Corporate Defendants' business from his deceased father, Mr. Ali Chaundy.

32. Defendant Jhangir is known to Plaintiffs as the current "owner" of the Corporate Defendants, Elite Renovators Inc and Elite Contractors Inc.

33. Defendant Jhangir is also known to Plaintiffs as the brother of Defendant Waqas Ahmed.

34. Upon information and belief, Defendant Jhangir manages all aspects of the Corporate Defendants' finances including handling their employees' payrolls.

**DEFENDANT WAQAS AHMED**

35. Upon information and belief, Defendant Waqas Ahmed (hereafter, "Defendant Ahmed") is an individual who has been the de facto and de jure owner, officer and/or agent of Defendant Corporations during the relevant time period, and he is sued individually. Defendant Ahmed has possessed and exercised operational control over Defendant Corporations, for example, he has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In particular, Defendant Ahmed has a prominent role in the setting of salaries for Corporate Defendants' employees and hires and fires Corporate Defendants' employees.

36. Upon information and belief, Defendant Ahmed has ownership interest in the Corporate Defendants, and he is an owner, manager, and supervisor of all his employees and the employees of the Corporate Defendants, together with Defendant Jhangir.

37. Defendant Ahmed is registered as the CEO of Defendant Elite Contractors Inc. in the New York Department of State, Division of Corporations records.

38. Defendant Ahmed is known to Plaintiffs as the co-owner of the Corporate Defendants Elite Renovators Inc and Elite Contractors Inc, together with Defendant Jhangir.

39. Defendant Ahmed is also known to Plaintiffs as the brother of Defendant Jhangir.

40. Plaintiffs were "employees" of Individual Defendants, Jhangir and Ahmed, within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

41. Plaintiffs were "employees" of Corporate Defendants, Elite Renovators Inc and Elite Contractors Inc., within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

42. Defendants Jhangir and Ahmed and Corporate Defendants, through Individual Defendants, controlled the hours, the task assignments and the overall work associated with Plaintiffs' work at the business premises of Elite Renovators Inc and Elite Contractors Inc.

43. Defendants Jhangir and Ahmed, and Corporate Defendants through Individual Defendants, controlled the terms and conditions of Plaintiffs' employment and are thus "employers" within the meaning of 29 U.S.C. § 203(d) and NYLL § 190(3).

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

44. Defendants operate a construction business at the principal executive office(s). At all relevant times, Individual Defendants Jhangir and Ahmed have or had operational control over the Corporate Defendants, have or had an ownership interest in the Corporate Defendants, and control or controlled significant functions of the Corporate Defendants.

45. Corporate Defendants and Individual Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

46. At relevant times, each Corporate Defendant possessed substantial control over Plaintiffs' and other similarly situated employees' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

47. Corporate Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' and all similarly situated individuals' employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

48. Upon information and belief, Individual Defendants operate Corporate Defendants as either an alter ego of themselves and/or fail to operate Defendant Corporations as an entity legally separate and apart from themselves, by among other things:

a. Failing to adhere to the corporate formalities necessary to operate Corporate Defendants as a Corporation(s);

b. defectively forming or maintaining the corporate entity of Corporate Defendants, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records;

c. transferring assets and debts freely as between all Defendants;

d. operating Corporate Defendants for his/ their own benefit as the sole or majority shareholders;

e. operating Corporation Defendants for his/their own benefit and maintaining control over this corporation(s) as a closed corporation(s);

f. intermingling assets and debts of his/their own with Corporate Defendants;

g. diminishing and/or transferring assets of Corporate Defendants to avoid full liability as necessary to protect their own interests; and

h. Other actions evincing a failure to adhere to the corporate form.

49. At all relevant times, Individual Defendants were Plaintiffs' employers within the meaning of the FLSA, NYLL and other law.

50. Individual Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services

51. Individual Defendants supervised Plaintiffs' work schedules and conditions of their employment.

52. Individual Defendants also determined the rate and method of payment for Plaintiffs and other similarly situated employees.

53. Individual Defendants also controlled and guided what limited recordkeeping that took place which Plaintiffs contend is deficient pursuant to FLSA and NYLL requirements.

**PLAINTIFFS**

54. Plaintiffs were employed by Elite Renovators Inc and/or Elite Contractors Inc., as bricklayers, while performing related miscellaneous duties for the Defendants.

55. Plaintiffs primarily performed bricklaying works, including but not limited to the installation of bricks and blocks for walls and structures, while employed by Defendants at various job sites.

56. Plaintiffs performed work at job sites throughout Brooklyn in New York.

57. Throughout Plaintiffs' employment, they were required to remain available until late at night after their regular work shift to receive instructions from Defendants to perform their job duties, such as confirming their work locations and/or directions and coordinating materials and tools to perform their work the next day.

***As to Plaintiff Ajsoc***

58. Defendants employed Plaintiff Ajsoc to work at Elite as a bricklayer.

59. Plaintiff Ajsoc worked for Elite's clients at various worksites from in or about March 2016 until on or about July 5, 2025.

60. Plaintiff Ajsoc's *regular shift* lasted five (5) or six (6) days per week, from approximately 7:00 a.m. until 4:00 p.m., throughout his employment with Defendants.

61. Specifically, from in or about March 2016 until in or about February 2022, Plaintiff Ajsoc worked six (6) days per week.

62. Plaintiff Ajsoc was regularly required to work approximately fifty-four (54) or more hours, from in or about March 2016 until in or about February 2022.

63. Since in or around March 2022 until on or about July 5, 2025, Plaintiff Ajsoc generally worked five (5) days per week, but occasionally was required to work six (6) days per week approximately once a month.

64. As such, Plaintiff Ajsoc was regularly required to work approximately fifty-four (54) or more hours per week until in or around February 2022, and between forty-five (45) and fifty-four (54) or more hours per week until on or about July 5, 2025, during his scheduled shifts.

65. Plaintiff Ajsoc was paid by Defendants a flat daily wage of approximately $110.00 per day in 2016; $120.00 per day in 2017; $130.00 per day in 2018; $140.00 per day in 2019; $150.00 per day in 2020; $160.00 per day in 2021; $170.00 per day from in or around the beginning of 2022 until in or around March 2022; $195.00 per day from in or around April 2022 until in or around March 2023; $205.00 per day from in or around April 2023 until in or around March 2024; and $215.00 per day until the end of 2024.

66. Beginning in the first week of January 2025, Defendants unilaterally set Plaintiff Ajsoc's fixed daily rate at $225.00, but refused to pay Plaintiff Ajsoc *at all* for some weeks that he actually worked.

67. After Defendants ceased paying any compensation to Plaintiff Ajsoc, Plaintiff Ajsoc repeatedly raised the issue with Defendant Jhangir, specifically on Fridays and Mondays, literally begging Defendant Jhangir to provide his compensation so that he could fulfill his family support obligations. When Plaintiff Ajsoc requested his payment, telling Defendant Jhangir, "I

have a family," Defendant Jhangir often became immediately angry at Plaintiff Ajsoc and even banged the door of his truck to express his anger toward Plaintiff Ajsoc.

68. Regardless of Plaintiff Ajsoc's repeated requests, Defendants refused and continue to fail to pay Plaintiff Ajsoc for all of the work he performed for Defendants.

***<u>As to Plaintiff Miguel Eduardo Ixmata Tzic</u>***

69. Defendants employed Plaintiff Tzic to work at Elite as a bricklayer.

70. Plaintiff Tzic worked for Elite's clients at various worksites from on or about May 5, 2023 until around the end of January 2026.

71. Plaintiff Tzic's *regular shift* generally lasted five (5) or six (6) days per week, from approximately from 7:10 a.m. until 4:00 p.m., throughout his employment with Defendants.

72. Although Plaintiff Tzic's regular shift at the job site lasted until approximately 4:00 p.m., he was required to stay one (1) or two (2) additional hours beyond his scheduled shift approximately two (2) days per week.

73. Since in or around 2024, Plaintiff Tzic was required to pick up the "company van" at the specific location(s) designated by Individual Defendants, Jhangir or Ahmed, located at 845 Bay Ridge Ave., Brooklyn, NY 11220 or 2041 79th St., Brooklyn, NY 11214.

74. By the time Plaintiff Tzic dropped off the "company van" at the designated location(s), he was finally able to leave at approximately 4:40 p.m.

75. As such, Plaintiff Tzic was regularly required to work approximately fifty-one (51) or more hours per week until the end of 2023, and fifty-four (54) or more hours per week from in or around 2024 through the end of January 2026, during his scheduled shifts.

76. Plaintiff Tzic was paid by Defendants a flat daily wage of approximately $150.00 per day in 2023; $165.00 per day in 2024; and $175.00 per day in 2025 and 2026, regardless of how many hours he actually worked.

77. Beginning in or around the first week of January 2025, Defendants refused to pay Plaintiff Tzic *at all* for some weeks that he actually worked, although Plaintiff Tzic was paid an arbitrary amount of money in lieu of a portion of his compensation whenever any of the Defendants was in the mood to pay him.

78. Regardless of Plaintiff Tzic's repeated requests, Defendants refused and continue to fail to pay Plaintiff Tzic for all of the work he performed for Defendants.

79. At all relevant times, Defendants never provided any wage statement to Plaintiffs.

80. Defendants failed to pay Plaintiffs at least minimum wage for each hour Plaintiffs worked (if ever), specifically since January 2025, as required by state law.

81. Defendants failed to pay Plaintiffs appropriate overtime compensation as required by federal and state laws when they required Plaintiffs to work in excess of 40 hours a week.

82. Defendants did not give any notice to Plaintiffs in English, and in their primary language, of their rate(s) of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

83. Defendants did not provide Plaintiffs an accurate statement of wages, as required by NYLL 195§ (3).

*Defendants' General Employment Practices*

84. Defendants regularly required Plaintiffs to work in excess of forty (40) hours per week without paying them appropriate minimum wage or overtime compensations as required by federal and state laws.

85. Even after Plaintiffs' scheduled shifts ended, Defendants required Plaintiffs to stand-by until late at night to receive instructions for the next day's job duties, without paying any compensation for their out-of-shift hours.

86. Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the Fair Labor Standards Act and New York Labor Law, by *inter alia,* not paying Plaintiffs the wages they were owed for the hours they worked.

87. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked (if any) and resulted in Plaintiffs' effective rate(s) of pay failing below the required minimum wage rate(s), specifically since January 2025.

88. Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide any additional compensation.

89. During Plaintiffs' employment, Defendants did not keep track of Plaintiffs' working hours, nor did they allow Plaintiffs to record their actual working hours.

90. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

91. Defendants paid Plaintiffs their wages with cash.

92. By employing this practice, Defendants avoided paying Plaintiffs at the overtime rate of time and a half for most or all of their hours worked in excess of forty (40) hours per week.

93. Defendants failed to post required wage and hour posters and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

94. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked and to avoid properly paying Plaintiffs for (1) their full hours worked, (2) overtime due, and (3) compensation for their out-of-shift hours to stand-by until late at night to receive instructions for the next day's job duties.

95. Defendants did not provide Plaintiffs, and similarly situated employees, with the wage statements and annual pay notices required by NYLL § § 195(1) and 195(3).

96. Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as require by NYLL § 195(3).

97. Defendants failed to provide Plaintiffs and other employees, at the time of hiring a statement in English and the employee's primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as require by New York Labor Law § 195(1).

## COLLECTIVE ACTION ALLEGATIONS

98. Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage, specifically since January 2025, to Plaintiffs or other similarly situated employees.

99. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

100. Plaintiffs bring this action individually and on behalf of all other former and/or current non-exempt employees who have been employed by Defendants as bricklayers or in other similarly titled positions with substantially similar job requirements and pay provisions, who performed the same or similar functions for Defendants, within the last three (3) years through the entry of judgment in this case (the "Collective Action Period"), and who failed to receive minimum wages and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members" or "Elite Bricklayers"), and who were subject to a common decision, policy, and plan of failing to provide required wage notices at the time of hiring, in contravention to federal and state labor laws.

101. Upon information and belief, the Collective Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants.

102. Upon information and belief, there are at least (10) Collective Action Members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

103. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the field of employment law and collective action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

104. This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this collective that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

105. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

106. Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds

generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants failed to pay the Collective Action Members the minimum wage in violation of the NYLL and the regulations promulgated thereunder;

c. Whether the Defendants failed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

d. Whether the Defendants failed to provide the Collective Action Members with a wage notice at the time of hiring as required by the NYLL;

e. Whether the Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and,

f. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

107. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

108. Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## STATEMENT OF CLAIM

## COUNT I

**[Violations of the Fair Labor Standards Act—Minimum Wage
Brought on behalf of the Plaintiffs and the FLSA Collective]**

109. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

110. At all times relevant, Plaintiffs the Collective Action Members were each an "employee" within the meaning of 29 U.S.C. §§ 201 *et seq.*

111. At all times relevant, Defendants have been employers of Plaintiffs and the Collective Action Member and engaged in commerce and/or the production of goods for commerce, within the meaning of 29 U.S.C. §§ 201 *et seq.*

112. Plaintiffs Ajsoc and Tzic were employed by Defendants to work at Elite Renovators Inc and/or Elite Contractors Inc., as bricklayers, while performing related miscellaneous duties for the Defendants from in or about March 2016 until on or about July 5, 2025 and from on or about May 5, 2023 until around the end of January 2026, respectively.

113. Throughout Plaintiffs' employment, their *regular shift* lasted five (5) or six (6) days per week, between approximately 7:00 a.m. and 4:40 p.m. while working at Elite.

114. Moreover, Plaintiffs were required to remain available until late at night after their regular work shift to receive instructions from Defendants to perform their job duties, such as confirming their work locations and/or directions and coordinating materials and tools to perform their work the next day.

115. While working at Elite, Plaintiffs were paid fixed daily rates, regardless of how many hours they worked.

116. Specifically, beginning in or around the first week of January 2025, Defendants refused to pay Plaintiffs *at all* for some weeks that they actually worked. Instead, Plaintiffs were paid an arbitrary amount of money in lieu of a portion of their compensation whenever any of the Defendants was in the mood to pay them.

117. Regardless of Plaintiffs' repeated requests, Defendants refused and continue to fail to pay Plaintiffs for all of the work they performed for Defendants to date.

118. Defendants have failed to pay Plaintiffs the Collective Action Members' minimum wages to which they are entitled under the FLSA.

119. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

120. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the Collective Action Members.

121. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

122. Due to Defendants' willful violations of the FLSA, Plaintiffs the Collective Action Members have suffered damages by being premium overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT II**

**[Violation of New York Labor Law—Minimum Wage Brought on behalf of Plaintiffs]**

123. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

124. Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

125. At all times relevant, Plaintiffs have been an employee of Defendants, and Defendants have been employers of Plaintiffs within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

126. Plaintiffs Ajsoc and Tzic were employed by Defendants to work at Elite Renovators Inc and/or Elite Contractors Inc., as bricklayers, while performing related miscellaneous duties for the Defendants from in or about March 2016 until on or about July 5, 2025 and from on or about May 5, 2023 until around the end of January 2026, respectively.

127. Throughout Plaintiffs' employment, their *regular shift* lasted five (5) or six (6) days per week, between approximately 7:00 a.m. and 4:40 p.m. while working at Elite.

128. Moreover, Plaintiffs were required to remain available until late at night after their regular work shift to receive instructions from Defendants to perform their job duties, such as confirming their work locations and/or directions and coordinating materials and tools to perform their work the next day.

129. While working at Elite, Plaintiffs were paid fixed daily rates, regardless of how many hours they worked.

130. Specifically, beginning in or around the first week of January 2025, Defendants refused to pay Plaintiffs *at all* for some weeks that they actually worked. Instead, Plaintiffs were paid an arbitrary amount of money in lieu of a portion of their compensation whenever any of the Defendants was in the mood to pay them.

131. Regardless of Plaintiffs' repeated requests, Defendants refused and continue to fail to pay Plaintiffs for all of the work they performed for Defendants to date.

132. Defendants have failed to pay Plaintiffs the minimum wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

133. Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

134. Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants unpaid minimum wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT III**

**[Violations of the Fair Labor Standards Act—Overtime Wage Brought on behalf of the Plaintiffs and the FLSA Collective]**

135. Plaintiffs, on behalf of themselves and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

136. Defendants employed Plaintiffs and the Collective Action Members for workweeks longer than forty (40) hours and willfully failed to compensate them for all their time worked in excess of forty (40) hours per week, at a rate of at least one and one-half times their regular hourly rates, in violation of the FLSA.

137. Plaintiffs Ajsoc and Tzic were employed by Defendants to work at Elite Renovators Inc and/or Elite Contractors Inc., as bricklayers, while performing related miscellaneous duties for

the Defendants from in or about March 2016 until on or about July 5, 2025 and from on or about May 5, 2023 until around the end of January 2026, respectively.

138. Throughout Plaintiffs' employment, their *regular shift* lasted five (5) or six (6) days per week, between approximately 7:00 a.m. and 4:40 p.m. while working at Elite.

139. During Plaintiffs' regular shift, Plaintiff Ajsoc generally worked between forty-five (45) and fifty-four (54) or more hours, and Plaintiff Tzic generally worked between fifty-one (51) and fifty-four (54) or more hours at Elite.

140. Moreover, Plaintiffs were required to remain available until late at night after their regular work shift to receive instructions from Defendants to perform their job duties, such as confirming their work locations and/or directions and coordinating materials and tools to perform their work the next day.

141. Throughout Plaintiffs' employment, they were paid fixed daily rates whenever Defendants chose to pay them, regardless of how many hours they worked.

142. Beginning in or around the first week of January 2025, Defendants refused to pay Plaintiffs *at all* for some weeks that they actually worked. Instead, Plaintiffs were paid an arbitrary amount of money in lieu of a portion of their compensation whenever any of the Defendants was in the mood to pay them.

143. Regardless of Plaintiffs' repeated requests, Defendants refused and continue to fail to pay Plaintiffs for all of the work they performed for Defendants to date.

144. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

145. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the Collective Action Members.

146. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

147. Due to Defendants' violations of the FLSA and Plaintiffs and the Collective Action Members are entitled to recover their unpaid overtime compensation in amounts to be determined at trial, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT IV**

**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiffs]**

148. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

149. Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

150. Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

151. Plaintiffs Ajsoc and Tzic were employed by Defendants to work at Elite Renovators Inc and/or Elite Contractors Inc., as bricklayers, while performing related miscellaneous duties for the Defendants from in or about March 2016 until on or about July 5, 2025 and from on or about May 5, 2023 until around the end of January 2026, respectively.

152. Throughout Plaintiffs' employment, their *regular shift* lasted five (5) or six (6) days per week, between approximately 7:00 a.m. and 4:40 p.m. while working at Elite.

153. During Plaintiffs' regular shift, Plaintiff Ajsoc generally worked between forty-five (45) and fifty-four (54) or more hours, and Plaintiff Tzic generally worked between fifty-one (51) and fifty-four (54) or more hours at Elite.

154. Moreover, Plaintiffs were required to remain available until late at night after their regular work shift to receive instructions from Defendants to perform their job duties, such as confirming their work locations and/or directions and coordinating materials and tools to perform their work the next day.

155. Throughout Plaintiffs' employment, they were paid fixed daily rates whenever Defendants chose to pay them, regardless of how many hours they worked.

156. Beginning in or around the first week of January 2025, Defendants refused to pay Plaintiffs *at all* for some weeks that they actually worked. Instead, Plaintiffs were paid an arbitrary amount of money in lieu of a portion of their compensation whenever any of the Defendants was in the mood to pay them.

157. Defendants have failed to pay Plaintiffs' premium overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations at the rate of time and one half for all hours worked in excess of 40 hours per week.

158. Regardless of Plaintiffs' repeated requests, Defendants refused and continue to fail to pay Plaintiffs for all of the work they performed for Defendants to date.

159. Defendants' failure to pay Plaintiffs' overtime compensation was not in good faith.

160. Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants unpaid overtime wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT V**

**[Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on behalf of Plaintiffs]**

161. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

162. Plaintiffs Ajsoc and Tzic were employed by Defendants to work at Elite Renovators Inc and/or Elite Contractors Inc., as bricklayers, while performing related miscellaneous duties for the Defendants from in or about March 2016 until on or about July 5, 2025 and from on or about May 5, 2023 until around the end of January 2026, respectively.

163. Throughout Plaintiffs' employment, they were paid fixed daily rates whenever Defendants chose to pay them, regardless of how many hours they worked.

164. Beginning in or around the first week of January 2025, Defendants refused to pay Plaintiffs *at all* for some weeks that they actually worked. Instead, Plaintiffs were paid an arbitrary amount of money in lieu of a portion of their compensation whenever any of the Defendants was in the mood to pay them.

165. While working at Elite, Defendants arbitrarily increased Plaintiffs' rates of pay from time to time without informing Plaintiffs and paid Plaintiffs on a weekly basis (for the majority of the weeks) until they ceased paying Plaintiffs on a regular basis, specifically since in or around January 2025.

166. Defendants have willfully failed to supply Plaintiffs with a wage notices, as

required by NYLL, Article 6, § 195(1), in English, or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner has deemed material and necessary.

167. Through their knowing or intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

168. Due to Defendants' violation of NYLL §195(1), Plaintiffs are entitled to recover from Defendants liquidated damages $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

**COUNT VI**

**[Violation of New York Labor Law—New York Pay Stub Requirement Brought on behalf of Plaintiffs]**

169. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

170. Plaintiffs Ajsoc and Tzic were employed by Defendants to work at Elite Renovators Inc and/or Elite Contractors Inc., as bricklayers, while performing related miscellaneous duties for the Defendants from in or about March 2016 until on or about July 5, 2025 and from on or about May 5, 2023 until around the end of January 2026, respectively.

171. Throughout Plaintiffs' employment, they were paid fixed daily rates whenever Defendants chose to pay them, regardless of how many hours they worked.

172. Beginning in or around the first week of January 2025, Defendants refused to pay Plaintiffs *at all* for some weeks that they actually worked. Instead, Plaintiffs were paid an arbitrary amount of money in lieu of a portion of their compensation whenever any of the Defendants was in the mood to pay them.

173. While working at Elite, Defendants paid Plaintiffs in cash (if ever) and failed to provide any wage statements to Plaintiffs.

174. Defendants have willfully failed to supply Plaintiffs with accurate statements of wages as required by NYLL, Article 6, §195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

175. Through their knowing or intentional failure to provide Plaintiffs with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §190 *et seq.*, and the supporting New York State Department of Labor Regulations.

176. Due to Defendants' violation of NYLL §195(3), Plaintiffs are entitled to recover from the Defendants liquidated damages of $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL §198(1-d).

**COUNT VII**

**[Violations of the Fair Labor Standards Act— Failure to Timely Pay Wages Brought on behalf of the Plaintiffs and the FLSA Collective]**

177. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

178. Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Plaintiffs and the Collective Action Members their wages for all hours worked each workweek on the regular payday for the pay period in which the workweek ended.

179. Plaintiffs Ajsoc and Tzic were employed by Defendants to work at Elite Renovators Inc and/or Elite Contractors Inc., as bricklayers, while performing related miscellaneous duties for the Defendants from in or about March 2016 until on or about July 5, 2025 and from on or about May 5, 2023 until around the end of January 2026, respectively.

180. Beginning the first week of January 2025, Defendants refused to pay Plaintiffs *at all* for some weeks that they actually worked. Instead, Plaintiffs were paid an arbitrary amount of money in lieu of a portion of their compensations whenever any of the Defendants was in the mood to pay them.

181. After Defendants ceased paying any compensation to Plaintiff Ajsoc, Plaintiff Ajsoc repeatedly raised the issue with Defendant Jhangir, specifically on Fridays and Mondays, literally begging Defendant Jhangir to provide his compensation so that he could fulfill his family support obligations. When Plaintiff Ajsoc requested his payment, telling Defendant Jhangir, "I have a family," Defendant Jhangir often became immediately angry at Plaintiff Ajsoc and even banged the door of his truck to express his anger toward Plaintiff Ajsoc.

182. Similarly, Defendants refused to pay Plaintiff Tzic at all for some weeks that he actually worked since in or around the first week of January 2025.

183. Regardless of Plaintiffs repeated requests for payment, Defendants refused and continue to fail to pay Plaintiffs for all the work they performed for Defendants.

184. Defendant's conduct was willful and lasted for the duration of the relevant time period.

185. Defendant's conduct was in violation of the Fair Labor Standards Act, 29 U.S.C. § 206.

186. Due to Defendants' violations of the FLSA, Plaintiffs and the Collective Action Members are entitled to recover from Defendants, jointly and severally, liquidated damages equal to the wages of each Plaintiffs or the Collective Action Members, together with costs and attorneys' fees.

**COUNT VIII**

**[Violation of the New York Labor Law – Late Payment of Wages Brought by Plaintiffs]**

187. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

188. At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the NYLL, § 190, et seq. At all relevant times, Defendants have employed "employee[s]," including Plaintiffs.

189. Plaintiffs Ajsoc and Tzic were employed by Defendants to work at Elite Renovators Inc and/or Elite Contractors Inc., as bricklayers, while performing related miscellaneous duties for

the Defendants from in or about March 2016 until on or about July 5, 2025 and from on or about May 5, 2023 until around the end of January 2026, respectively.

190. Defendants did not pay Plaintiffs, who were manual laborers, on a weekly basis.

191. Instead, Defendants issued arbitrary amounts of payments to Plaintiffs at any time that they wished, specifically since January 2025.

192. Moreover, Defendants failed and still fail to pay almost any compensation to Plaintiffs for the hours they worked, specifically since January 2025.

193. The aforesaid conduct of Defendants was knowing, intentional, and willful.

194. By their aforesaid conduct, Defendants willfully violated the provisions of the NYLL regarding timely payment of wages, NYLL Art. 6 § 191, *et seq*.

195. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants, jointly and severally, liquidated damages equal to the wages of Plaintiff, together with costs and attorneys' fees.

**COUNT IV**

**[Violation of the New York Labor Law Article 6 Failure to Pay Regular Wages Brought by Plaintiffs]**

196. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

197. As alleged above, Defendants suffered and permitted Plaintiffs to work numerous hours without paying them the wages to which he was and is entitled.

198. Plaintiffs Ajsoc and Tzic were employed by Defendants to work at Elite Renovators Inc and/or Elite Contractors Inc., as bricklayers, while performing related miscellaneous duties for

the Defendants from in or about March 2016 until on or about July 5, 2025 and from on or about May 5, 2023 until around the end of January 2026, respectively.

199. During Plaintiffs' employment at Elite, Defendants failed and refused to pay Plaintiffs all the hours they actually worked, including their out of shift hours that they were required to stand-by to receive instructions for the next day's job duties from Defendants.

200. Moreover, since in or around January 2025, Defendants have failed to pay any wages to Plaintiffs, except on certain occasions when Defendants paid arbitrary amounts of money in lieu of a portion of Plaintiffs' compensation, at their discretion.

201. Defendants' failure to pay Plaintiffs the wages that they earned constitutes outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiffs' rights.

202. Defendants have acted willfully and either knew that their conduct violated the NYLL or have shown reckless disregard for the matter of whether their conduct violated the NYLL.

203. Defendants have not acted in good faith with respect to the conduct alleged herein.

204. As a result of Defendants' unlawful practices, Plaintiffs have suffered a loss of wages.

205. As a result of Defendants' violations of the NYLL and the regulations promulgated therein, Plaintiffs have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, CPLR interest, attorneys' fees, and costs of litigation.

**Prayer for Relief**

WHEREFORE, Plaintiffs, individually, and on behalf of all other similarly situated person, pray for the following relief:

a) Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under Fair Labor Standards Act, and its supporting regulations, and the New York Labor Law, Articles 6 and 19, § 650 et seq., and the supporting New York State Department of Labor Regulations;

b) Designation of this action as an FLSA collective action on behalf of the Plaintiffs and FLSA Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective Action Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

c) Designation of Plaintiffs as Representatives of the Collective Action Members;

d) An order declaring that the Defendants violated the FLSA;

e) An order declaring that the Defendants violations of the FLSA were willful;

f) An order declaring that the Defendants violated the NYLL;

g) An order declaring that the Defendants' violations of the NYLL were willful;

h) An award of minimum wage compensation under the FLSA and NYLL;

i) An award of damages pursuant to New York Labor Law § § 195(1), (3), and 198;

j) An award of Plaintiffs’ compensatory damages, including all unpaid wages owed, in an amount according to proof;

k) Awarding unpaid wages under New York State law for late payment of wages;

l) Awarding unpaid wages, including but not limited to overtime compensation and unpaid wages for Plaintiffs’ out-of-shift hours and work performed during their shifts since in or around January 2025, pursuant to the NYLL and the New York Department of Labor Regulations, plus an equal amount in liquidated damages;

m) An award of liquidated damages pursuant to the FLSA;

n) An award of liquidated damages for violations of the NYLL;

o) All penalties available under the applicable laws;

p) Attorneys' fees pursuant to 29 U.S.C. § 216, NYLL § 663, and all other applicable statutes;

q) Pre- and post-judgment interest as permitted by law;

r) All costs incurred in prosecuting these claims; and

s) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: Flushing, New York
April 7, 2026

**SEO LAW GROUP, PLLC**

By: */s/ Diana Seo*_______________
Diana Seo, Esq.
136-68 Roosevelt Ave., Suite 726
Flushing, New York 11354
Telephone: (718) 500-3340
Email: diana@seolawgroup.com
*Attorneys for Plaintiffs and proposed FLSA Collective Plaintiffs*

**DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiffs' employment, to Plaintiffs' causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Dated: April 7, 2026

**EXHIBIT 1**

**CONSENT TO SUE**
**UNDER FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Elite Renovators Inc and Elite Contractors Inc, and/or other related entities and/or individuals. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Continent Fee retainer signed by the named plaintiff in this case.

Pedro Daniel To Aisac
Full Legal Name

[signature]
Signature

02/05/26
Date

**EXHIBIT 2**

**CONSENT TO SUE**
**UNDER FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Elite Renovators Inc and Elite Contractors Inc, Hasan Jhangir and/or other related entities and/or individuals. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Continent Fee retainer signed by the named plaintiff in this case.

Miguel Eduardo Ixmatá Tzic
Full Legal Name

[signature]
Signature

03-17-2026
Date